UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| CALGON CARBON CORPORATION and <br> CABOT NORIT AMERICAS, INC., <br>                 Plaintiffs, <br>     v. <br> UNITED STATES, <br>                 Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Court No. 22-00025 |

**COMPLAINT**

Calgon Carbon Corporation and Cabot Norit Americas, Inc. (collectively, "Plaintiffs") through their attorneys, allege and state as follows:

**JURISDICTION**

1.  Plaintiffs bring this action pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii). This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c). Plaintiffs contest certain factual findings and legal conclusions in the final results of the United States Department of Commerce's ("Commerce" or "the Department") thirteenth annual administrative review of the antidumping duty order on <u>Certain Activated Carbon from the People's Republic of China</u> (Case No. A-570-904) covering the period of review ("POR") April 1, 2019 through March 31, 2020. These final results of the Department's review were published as <u>Certain Activated Carbon from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2019-2020</u>, 86 Fed. Reg. 73,731 (Dep't Commerce Dec. 28, 2021) (hereinafter, "<u>Final Results</u>") and the accompanying <u>Issues and Decision Memorandum for the Final Results of the Thirteenth Antidumping Duty Administrative Review</u> (Dec. 17, 2021) (hereinafter, "<u>IDM</u>").

## STANDARD OF REVIEW

2. The standard of review applicable in this action is whether the Department's determinations, findings, or conclusions are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## STANDING OF PLAINTIFFS

3. Plaintiffs are U.S. producers of certain activated carbon, the domestic product that is like the product that was the subject of the challenged administrative review determination. Plaintiffs participated actively in the administrative review and are interested parties as described in section 771(9)(C) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677(9)(C). Plaintiffs have standing to bring this action under 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4. The Final Results for the above-referenced administrative review were published in the Federal Register on December 28, 2021 (86 Fed. Reg. 73,731).

5. This action was commenced by the filing of a: (1) Summons on January 27, 2022 (see ECF No. 1), which was filed within 30 days of publication of the Final Results; and (2) this Complaint, which is being filed within 30 days of the filing of the Summons. This action, therefore, is timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I), 28 U.S.C. § 2636(c) and Rule 3(a)(2) of the U.S. Court of International Trade.

## STATEMENT OF CLAIMS

6. The Department's Final Results are unsupported by substantial evidence on the record and are otherwise contrary to law in the following respects:

## COUNT I

7. Paragraphs 1 through 6 above are re-alleged and incorporated herein by reference.

8. During the administrative review, the Chinese respondents identified "bituminous coal" as a factor of production that was consumed in manufacturing the subject merchandise in China. In the preliminary results of the review, to value bituminous coal, the Department relied on the value of Malaysian imports (the primary surrogate country) of merchandise classified under Harmonized Tariff Schedule ("HTS") subheading 2701.12, the subheading specific to "bituminous coal." See Certain Activated Carbon From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2019–2020, 86 Fed. Reg. 33,988 (June 28, 2021), and accompanying Decision Memorandum for the Preliminary Results of Antidumping Duty Administrative Review: Certain Activated Carbon from the People's Republic of China; 2019-2020, at 29 (June 21, 2021) (hereinafter, "PDM").

9. In the Final Results, the Department instead relied on the value of Malaysian imports of merchandise classified under HTS subheading 2701.19, the subheading specific to "other coal." See IDM at 20-23 (Comment 4). In doing so, the Department erroneously relied on a formula and calculation proposed by the respondents to calculate the heat value of the bituminous coal consumed during production. See id. at 22. Specifically, the Department accepted, without explanation, respondents' claim that the heat value for the coal consumed is lower than 5,833 kcal/kg., such that it is falls in the "other coal" HTS heading that applies to coal having a volatile matter limit (on a dry, mineral-matter-free basis) exceeding 14 percent and a calorific value limit (on a moist, mineral-matter-free basis) equal to or greater than 5,833 kcal/kg. See id.

10. The Department's reliance on the Malaysian import value for merchandise classified under HTS subheading 2701.19 improperly relied on a formula submitted by

respondents that derives the useful heat value from a report about the domestic coal industry in India and relies on domestic Indian standards. There is, however, no definition of useful heat value on the record, other than the country-specific Coal India Ltd. formula that underlies respondents' formula for defining "calorific value." In fact, the very same Indian coal report provides a side-by-side comparison of Coal India Ltd.'s useful heat value (using the formula relied upon by respondents) to the internationally-accepted gross calorific value (the standard used in the HTS), proving that these are two different units of measure. The Department conflated the two units of measure in determining that the bituminous coal used by respondents should be valued using Malaysian import statistics for merchandise classified under HTS subheading 2701.19. Petitioners raised these concerns during administrative briefing before the Department, and the Department failed to address them meaningfully in the Final Results. See IDM at 20-22.

11. Instead, in the Final Results, the Department should have continued to rely on the value of Malaysian imports of merchandise classified under HTS subheading 2701.12, which is specific to "bituminous coal." The Department determined that the import value under 2701.12 is not aberrant, even though it did not rely on that value. See IDM at 22-23.

12. As a result, the Department's Final Results are unsupported by substantial evidence and are not in accordance with law.

## COUNT 2

13. Paragraphs 1 through 12 above are re-alleged and incorporated herein by reference.

14. The Department's treatment of the consumption of bituminous coal reported by mandatory respondent Datong Juqiang Activated Carbon ("DJAC") is unsupported by record evidence. See IDM at 4-11 (Comment 1). DJAC consumes bituminous coal as the primary raw

material input in the production of activated carbon. In the initial stage of the production process, DJAC processes bituminous coal into normal-ash carbonized material. During the intermediate and final stages of production, DJAC further processes the self-produced normal-ash carbonized material into finished products in the form of activated carbon with low- and normal-ash content.

15. In the Final Results, the Department accepted DJAC's explanation that "because some of the bituminous coal consumed was contained in the normal-ash carbonized material sold, *and some of the bituminous coal consumed was contained in the normal-ash carbonized material in the closing inventory*, there is a difference between the quantity of bituminous coal actually consumed during the POR and the POR standard bituminous coal consumption." IDM at 10-11 (emphasis added). In accepting DJAC's explanation that the difference between the company's actual and theoretical bituminous coal consumption is due, in part, to the closing POR balance of carbonized material, the Department implicitly accepted DJAC's exclusion of the closing POR balance of normal-ash carbonized material from the bituminous coal consumption factors. The Department's acceptance of DJAC's methodology is improper and resulted in the consumption factors for bituminous coal being understated.

16. The Department's acceptance of DJAC's reporting in the Final Results conflicts with precedent in prior reviews, in which the Department excluded the opening POR balance of carbonized material from the consumption factors because it was consumed and accounted for in the preceding administrative review segment. In doing so, Commerce implicitly determined that the opening inventory balance of self-produced normal-ash carbonized material constitutes the closing inventory balance of that material in the immediately preceding review and, as such, this quantity should be accounted for in the consumption factor for bituminous coal during the POR in which the carbonized material was produced. While the Final Results purport to be consistent

with prior review segments, the Department fails to recognize that by excluding the closing POR balance of carbonized material, it failed to capture that consumption in this review.

17. The Department's acceptance of DJAC's reporting of consumption of bituminous coal is unreasonable and unsupported by record evidence because it fails to account for the consumption of carbonized material during any segment.

18. As a result, the Department's <u>Final Results</u> are unsupported by substantial evidence and are not in accordance with law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) hold that Commerce's <u>Final Results</u> are unsupported by substantial evidence and are otherwise not in accordance with law with respect to the claims advanced by Plaintiffs in this Complaint;

(b) remand the <u>Final Results</u> to the Commerce Department with instructions to correct the errors set forth in this Complaint; and

(c) provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
R. ALAN LUBERDA
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Calgon Carbon Corporation and
Cabot Norit Americas, Inc.

Dated:  February 24, 2022

# CERTIFICATE OF SERVICE AND NOTICE TO INTERESTED PARTIES

### Calgon Carbon Corp. v. United States
### CIT Court No. 22-00025

Pursuant to Rule 3(f) of the Rules of the Court of International Trade, I certify that on February 24, 2022 copies of the foregoing Complaint were served upon the following individuals and notified all the interested parties who were a party to the proceeding below, by certified mail, return receipt requested:

**UPON THE UNITED STATES**

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278-0001

Director, Civil Division
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW, Room 12124
Washington, DC 20530


**UPON THE U.S. DEPARTMENT OF COMMERCE**

General Counsel
U.S. Department of Commerce
14th Street & Constitution Avenue, NW
Washington, DC 20230

Ms. Evangeline Keenan, Esq.
Director, APO/Dockets Unit
U.S. Department of Commerce
14th Street & Constitution Avenue, NW
Room 1874
Washington, DC 20230

**On behalf of Carbon Activated Tianjin Co., Ltd., Datong Juqiang Activated Carbon Co., Ltd., Datong Municipal Yunguang Activated Carbon Co., Ltd., Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd., Shanxi Industry Technology Trading Co., Ltd., and Jilin Bright Future Chemicals Co., Ltd.**

Francis J. Sailer, Esq.
Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP
1201 New York Ave., NW
Suite 650
Washington, DC 20005


**On behalf of Jacobi Carbons AB and its affiliates, Tianjin Jacobi International Trading Co. Ltd., and Jacobi Carbons Industry (Tianjin) Co. Ltd. (collectively, "Jacobi")**

Daniel L. Porter, Esq.
Curtis, Mallet-Prevost, Colt & Mosle LLP
1717 Pennsylvania Avenue, NW
Washington, DC 20006


**On behalf of Tancarb Activated Carbon Co., Ltd.; Ningxia Huahui Activated Carbon Co., Ltd. and Ningxia Mineral & Chemical Limited**

Gregory S. Menegaz, Esq.
deKieffer & Horgan
1090 Vermont Ave., NW
Suite 410
Washington, DC 20005


**On behalf of Shanxi Dapu International Trade Co., Ltd., Beijing Pacific Activated Carbon Products Co., Ltd.**

Meng Jing, Esq.
Guantao Law Firm
18/F, Tower B, Xinsheng Plaza
5 Finance Street
Xicheng District, Beijing 100032, China

**On behalf of Shanxi Tianxi Purification Filter Co., Ltd., Shanxi Sincere Industrial Co., Ltd. and Tianjin Channel Filters Co., Ltd.**

Zhang Yi
Gaopeng & Partners
28th/F, Silver Tower
2 North Dongsanhuan Road
Beijing 100027, China

/s/ John M. Herrmann
JOHN M. HERRMANN